## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

JAN 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

HELENE D. STEVENS,
INDIVIDUALLY AND AS
SUCCESSOR IN INTEREST OF
THE ESTATE OF DOUGLAS ALAN
McCOMBS,

                 **PLAINTIFF**

    v.

NOVARTIS PHARMACEUTICALS
CORPORATION
1 Health Plaza
East Hanover, NJ 07936

            **DEFENDANT.**

CASE NUMBER  1:07CV00061

JUDGE: Paul L. Friedman

DECK TYPE: Personal Injury/Malpracti

DATE STAMP: 01/11/2007

**JURY TRIAL DEMANDED**

*JURY ACTION*

### COMPLAINT AND JURY DEMAND

NOW COME Plaintiff Helen D. Stevens ("Mrs. Stevens" or "Plaintiff"),

individually and as successor in interest to the estate of her deceased husband

Douglas Alan McCombs ("Mr. McCombs"), by and through counsel, and hereby

sues the Defendant, Novartis Pharmaceuticals Corporation ("Novartis" or

"Defendant"), a Delaware corporation with principal offices located at 1 Health

Plaza, East Hanover, New Jersey, 07936-1080 and for her causes of action states:

1

## I.    <u>INTRODUCTION</u>

1.    The drugs Aredia® and Zometa®, produced and marketed by Novartis and other related Novartis entities, each cause and precipitate osteonecrosis of the jaw, mandible or maxilla bone among patients taking those drugs. Osteonecrosis is bone death resulting from poor blood supply to an area of the bone. Osteonecrosis of the jaw is a permanently disfiguring and extremely painful condition, and can result in the complete loss of the patient's jaw bone. Mr. McCombs was infused with Zometa®, and suffered osteonecrosis of the jaw.

## II.    <u>PARTIES</u>

### A.    <u>PLAINTIFF</u>

2.    Plaintiff, Helene D. Stevens is a citizen and resident of the State of California, residing in Paradise, California. She resided there with her husband until his death. (A Copy of the December 21, 2006 Order of Butte County Superior Court ordering the chose in action against Novartis of Douglas Alan McCombs' estate as property of Ms. Stevens is attached hereto as Exhibit A).

3.    The late Douglas Alan McCombs, resided in Paradise, California with his wife,  He was prescribed, purchased, and was infused with Zometa® and as a result thereof suffered severe osteonecrosis of the jaw.

2

4.    At the time of his receipt of Zometa® infusions, Mr. McCombs resided in California and received Zometa® infusions there.

## B.    DEFENDANT

5.    Defendant Novartis is a foreign corporation with its headquarters located in East Hanover, New Jersey. Novartis markets and distributes Aredia® and Zometa® throughout the world including all fifty states in the United States, and throughout California.

6.    At all times relevant hereto, Novartis was engaged in the business of marketing, distributing, promoting, testing, labeling and/or selling the pharmaceuticals Aredia® and Zometa®.

## III.    JURISDICTION AND VENUE

7.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000 exclusive of interest and costs, and because this is an action by an individual Plaintiff who is a citizen of a different state than the Defendant. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and 1391(c).

3

## IV.    **FACTUAL BACKGROUND**

8.    Aredia® and Zometa® are classified as a bisphosphonates and are prescribed for the management of metastatic disease to the bone and other bone diseases and conditions.  Zometa® is Novartis's "successor" drug to Aredia®, as Aredia® was the first generation version of the drug Zometa®.  Zometa® is now marketed by Novartis for all or almost all of the uses for which it previously marketed Aredia®.

9.    Because of the long "half-life" of the drugs Aredia® and Zometa® in the body, the drugs remain in the bones of persons who have been infused with them for at least many, many years or even permanently.  For this reason, onset of osteonecrosis of the jaw or worsening of a patient's condition can occur years after infusions of the drugs have been discontinued.

10.    Aredia® and Zometa® have been approved by the United States Food and Drug Administration.

11.    Although Novartis should have known and disclosed that Aredia® and Zometa® cause osteonecrosis of the jaw even before these drugs were placed on the market, in the year 2002 or before, Novartis was notified by one physician that he had dozens of cases in which patients taking Aredia® had experienced problems so severe that they had lost portions of their jaws.  Other oral surgeons during that time frame

4

and before had been reporting such problems to Novartis. On information and belief, Novartis had similar information as to adverse effects caused by its drug Zometa®, which has similar properties and effects as Aredia® and is marketed by Novartis as a more effective replacement for Aredia®. Nevertheless, Novartis did not undertake to advise physicians, notify the consuming public or place information about the possibility of suffering osteonecrosis of the jaw on their products until September of 2004. Novartis did not undertake to notify dental professionals until May of 2005. These efforts to date by Novartis to provide notice are not adequate to provide the public and health care professionals with the information needed to understand the risks inherent in the use of Aredia® and Zometa®.

12.    Despite knowledge of the specific risk, Novartis has failed timely to initiate studies to further investigate risks associated with the use of Aredia® and Zometa®.

13.    Further, Novartis had a duty fully to test and evaluate Aredia® and Zometa® prior to their introduction to the market, to ensure that the drugs were safe to use for their intended purpose. Novartis failed to satisfy this duty.

14.    Novartis failed properly to conduct a "dosing study" to ascertain the minimum effective quantities of Aredia® and Zometa®, and thereby to establish the proper quantities of the drugs to be administered to patients and the proper number of

5

infusions which patients should receive. Identifying the minimum effective dosage and setting the dosage instructions accordingly are critical to avoiding the occurrence of side effects. As a result of Novartis's failure to publish, advise, or instruct health care providers as to the proper dosage, upon information and belief the amount of the drugs actually administered to Mr. McCombs constituted an overdose, and contributed to the side effects and harm he suffered.

15.    Mr. McCombs was prescribed and infused with Zometa® in the course of medical treatment and as a result of using the drugs suffered severe pain and discomfort, exposed dead bone in his mouth, and disfiguration and other harm by his development of osteonecrosis of the jaw. As a result of the osteonecrosis, Mr. McCombs suffered significant pain, difficulty or inability to ingest food normally, physical disfigurement, emotional distress and mental anguish. Mr. McCombs incurred significant medical and health care related costs and expenses to treat his condition. Mr. McCombs was severely damaged in mind and in body and his enjoyment of life was decreased, and he was adversely affected in his avocation, career and/or employment. Mr. McCombs had his life span shortened.

16.    Defendant knew or should have known that Aredia® and Zometa® are dangerously defective products which pose risks to human health, unknown and

6

unknowable by the consuming public and medical professionals, including Mr. McCombs, and his health care providers, unless disclosed by Defendant.

17.    Because Novartis failed timely and sufficiently to notify Mr. McCombs and his physicians and health care providers of the true risk of osteonecrosis of the jaw when using Aredia® and/or Zometa®, Mr. McCombs in conjunction with his health care providers was unable to undertake preventive dental care which may have prevented his development of osteonecrosis of the jaw or mitigated the harm he suffered.

18.    The Defendant was engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising and otherwise distributing Aredia® and Zometa® in interstate commerce, which it sold and distributed throughout the world, including the State of California.

19.    Mr. McCombs was using Zometa® in the manner for which it was intended or in a reasonably foreseeable manner.

20.    Zometa® was expected to and did reach Mr. McCombs without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised and otherwise distributed.

21.    Mr. McCombs was not aware of, and reasonably could not have discovered, the dangerous nature of Aredia® and/or Zometa®.

22.    Aredia® and Zometa® cause increased risks of osteonecrosis of the jaw upon consumption, and therefore constitute products unreasonably dangerous for normal use due to their defective design, defective manufacture, and the Defendant's misrepresentations and inadequate disclosure of relevant information to Plaintiff including, *inter alia*, the actual risk of developing osteonecrosis of the jaw and the permanent, irreversible harm associated with this disease.

23.    As a direct and proximate result of Defendant's manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, and otherwise distributing Aredia® and Zometa® in interstate commerce, Mr. McCombs suffered osteonecrosis of the jaw.

## V.    CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY

24.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

25.    As a direct and proximate result of Defendant's manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, and otherwise distributing Aredia® and Zometa® in interstate commerce, Plaintiff has suffered compensatory damages.

8

26.     The Defendant, therefore, is strictly liable to the Plaintiff, and Plaintiff is entitled to compensatory damages in an amount to be proven at trial.  Additionally, Defendant's conduct was so outrageous as to constitute ill will, legal malice, bad motive and reckless indifference to the physical well being and interests of its consumers, including Mr. McCombs.  Plaintiff has suffered compensatory damages and is entitled to punitive damages in an amount to be proven at trial.

## COUNT II
## NEGLIGENCE - NEGLIGENT MANUFACTURE

27.     Plaintiff repeat and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs, and further alleges:

28.     It was the duty of the Defendant to use reasonable care in the manufacturing, creating, designing, testing, sterilizing, packaging, supplying, and otherwise distributing Aredia® and Zometa®.

29.     Contrary to its duty, the Defendant failed:  adequately and properly to test and inspect Aredia® and Zometa® so as to ascertain whether or not each was safe and proper for the purpose for which each was designed, manufactured and sold; adequately and properly to conduct a dosing study or otherwise to test Aredia® and Zometa® to ascertain the minimum effective dosage and to use this information to instruct users of the drugs of the proper dosage so as to minimize the risk of development of osteonecrosis of jaw or other side effects; to utilize and/or implement a

9

reasonably safe design in the manufacture of Aredia® and Zometa®; to manufacture Aredia® and Zometa® in a reasonably safe condition appropriate for the use for which they were intended; and adequately and properly to test Zometa® to ascertain the proper infusion speed to reduce the risk of liver injury or other side effects.

30.    Defendant manufactured and sold Aredia® and Zometa®, which as constituted were a hazard to Mr. McCombs health. Defendant's manufacture and sale of Aredia® and Zometa® as constituted caused Mr. McCombs to suffer adverse side effects and disease.

31.    Defendant was otherwise careless and negligent.

32.    As a direct and proximate result of Defendant's negligence in manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, and otherwise distributing Aredia® and Zometa® in interstate commerce, Mr. McCombs  suffered osteonecrosis of the jaw. Plaintiff has suffered compensatory damages and is entitled to punitive damages in an amount to be proven at trial.

### COUNT III
### NEGLIENCE – FAILURE TO WARN

33.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs, and further alleges:

34.   It was the duty of the Defendant to use reasonable care in the labeling, marketing, selling, advertising, and promoting of Aredia® and Zometa®, and to warn Mr. McCombs and his medical providers of the true risk of osteonecrosis of the jaw and other side effects when using Defendant's drugs.

35.   Contrary to its duty, the Defendant failed:  adequately and properly to warn Mr. McCombs of the risks of serious complications and bodily harm when Aredia® and Zometa® are used in the manner for which they were intended; adequately and properly to warn Mr. McCombs of the risks of diseases when Aredia® and Zometa® are used in a manner for which they were intended; adequately and properly to label Aredia® and Zometa® so as to warn Mr. McCombs of the risks of complications and disease; and adequately and properly to label Aredia® and Zometa® so as to warn Mr. McCombs of the risks of osteonecrosis of the jaw; to inform Mr. McCombs and his medical providers the proper speed at which to infuse Zometa® so as to reduce the risk of liver injury or other side effects.

36.   Further, Defendant failed to meet the standard of care set by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., related amendments and codes and federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations.  Defendant further failed in the following respects:

11

a. The labeling lacked adequate information on the use of the drugs Aredia® and Zometa® (21 C.F.R. Section 201.56(a) and (d));

b. The labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitation, osteonecrosis of the jaw, and other adverse medical conditions as soon as there was reasonable evidence of their association with the drug (21 C.F.R. 201.57(e));

c. There was inadequate information for patients for the safe and effective use of Defendant's drugs (21 C.F.R 201.57(f)(2));

d. There was inadequate information regarding special care to be exercised by Mr. McCombs and Mr. McCombs't doctors for safe and effective use of Defendant's drugs (21 C.F.R. 201.57(f)(1));

e. The labeling was misleading and promotional (21 C.F.R. 201.56(b)); and

f. Defendant's acts constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331.

37. Defendant's products Aredia® and Zometa® were unaccompanied by proper and adequate warnings regarding the risk of osteonecrosis of the jaw associated with the use of Defendant's products and the scope, severity and duration of such injuries.

38. Despite Defendant's failure to provide adequate warnings to protect users or consumers of Aredia® and Zometa®, Defendant nevertheless continued aggressively to market, promote, distribute, and sell the dangerously defective products.

12

39.     As a result of Defendant's negligence and the violations of the statutes and regulations listed above, Mr. McCombs suffered injuries and damages as alleged herein.

40.     As a direct and proximate result of Defendant's failure to warn, Mr. McCombs suffered osteonecrosis of the jaw. Mr. McCombs developed other diseases and conditions. Plaintiff has suffered compensatory damages and is entitled to punitive damages in an amount to be proven at trial.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

41.     Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

42.     Defendant expressly warranted to Mr. McCombs, by and through statements made by Defendant or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Aredia® and Zometa® were safe, effective, fit and proper for their intended use.

43.     In using Aredia® and/or Zometa®, Mr. McCombs and his health care providers relied on the skill, judgment, representations and foregoing express warranties of the Defendant. Said warranties and representations were false in that the

13

aforementioned products were not safe and were unfit for the uses for which they were intended.

44.    As a direct and proximate result of Defendant's breaches of warranties, Mr. McCombs suffered osteonecrosis of the jaw, developed other diseases and conditions, and suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

## COUNT V
## BREACH OF IMPLIED WARRANTY

45.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

46.    Prior to the time that Aredia® and/or Zometa® were used by Mr. McCombs, Defendant impliedly warranted to him that Aredia® and/or Zometa® were of merchantable quality and safe and fit for the use for which they were intended.

47.    Mr. McCombs was unskilled in the research, design and manufacture of Aredia® and Zometa® and reasonably relied on the skill, judgment and implied warranty of the Defendant in using Aredia® and/or Zometa®.

48.    Aredia® and Zometa® were neither safe for their intended use nor of merchantable quality, as warranted by Defendant, in that they had dangerous propensities when put to their intended use and would cause severe injuries to the user.

49.    As a direct and proximate result of Defendant's breaches of warranties, Mr. McCombs suffered osteonecrosis of the jaw, developed other diseases and conditions, and suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

**COUNT VI**
**LOSS OF CONSORTIUM**
**(MS. STEVENS, INDIVIDUALLY)**

50.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

51.    Before suffering the injuries described herein, Mr. McCombs was able to and did perform all the duties of a husband, including assisting in maintaining the home, and providing love, companionship, affection, society, sexual relations, moral support, and solace to Ms. Stevens.  As a direct and proximate result of suffering osteonecrosis of the jaw, Mr. McCombs was impaired in his performance of the duties of a husband, including sexual intercourse, assisting with housework, participating in family recreational or social activities with Ms. Stevens.  Due to the nature of the injuries sustained by Mr. McCombs and the severe physical and psychological strains they caused him, Mr. McCombs was no longer able to provide Ms. Stevens with the same level of love, companionship, affection, society, moral support, and solace he provided to her prior to his injuries.  Ms. Stevens was therefore deprived of Mr.

McCombs' companionship and consortium, and has suffered compensatory damages and is entitled to punitive damages in an amount to be proven at trial.

## COUNT VII
## WRONGFUL DEATH
**(Ms. Stevens as successor in interest, surviving spouse or personal representative)**

52.     Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

53.     This claim is brought pursuant to § 377.60 of the California Code of Civil Procedure, concerning death by wrongful act of another, and seeks all relief available under that statute, including without limitation expenses for medical care and hospitalization; funeral expenses; the present monetary value of the decedent, Mr. McCombs, including but not limited to: lost income of the decedent; services, protection care and assistance of the decedent; society, companionship, comfort, guidance, kindly offices and advice of the decedent; and punitive damages.

54.     Mr. McCombs was infused with Zometa® and as a result thereof developed severe osteonecrosis of the jaw.

55.     The osteonecrosis of the jaw caused by the Zometa® infusions contributed to Mr. McCombs death and shortened his life.

56.     As a result of the wrongful death of Mr. McCombs, which was directly and proximately caused by Defendants' actions as described herein, Plaintiff Ms.

16

Stevens, individually, as surviving spouse and as personal representative of Mr. McCombs' estate, is entitled to compensatory and punitive damages for Mr. McCombs' wrongful death as specified above in amounts to be proven at trial.

**WHEREFORE**, Plaintiff prays that this honorable Court enter judgment against Novartis, and in favor of the Plaintiff, and to award the following relief:

a.    Award Ms. Stevens, individually, as surviving spouse and in the capacity as personal representative of her husband's estate, damages to compensate for the wrongful death of her husband, Douglas Alan McCombs;

b.    Award Plaintiff all damages allowed by law to compensate Mr. McCombs for the losses which he endured;

c.    Award Plaintiff damages equal to the amount of Mr. McCombs' medical and health care costs and expenses incurred;

d.    Award Plaintiff damages equal to any amount of lost wages and earnings;

e.    Award Ms. Stevens damages for loss of companionship and consortium with Mr. McCombs;

f.    Award Plaintiff punitive/exemplary damages to the extent necessary and appropriate to punish and deter the conduct complained of herein;

g.    Award Plaintiff attorney's fees and costs, plus interest, as allowed by law; and

h.    Award such other and further legal and equitable relief as this honorable Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand trial by jury of this action.

Respectfully submitted,

*[signature]*

Bart T. Valad, Esq.
John J. Vecchione, Esq.
VALAD & VECCHIONE, PLLC
3863 Plaza Drive
Fairfax, Virginia  22030
Telephone:  (703) 352-4800
Fax:  (703) 352-4820

Dated:  January 11, 2007        *Attorneys for Plaintiffs*

18

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, Bar number, and address):
After recording return to:
W. Z. Jefferson Brown, SBN 38996
Price & Brown
466 Vallombrosa Ave.
P. O. Box 1420
Chico, CA  95928
  TELEPHONE NO.: (530) 343-4412
  FAX NO. (Optional): (530) 343-7251
E-MAIL ADDRESS (Optional):
  ATTORNEY FOR (Name): Helene D. Stevens

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Butte
  STREET ADDRESS: 655 Oleander Ave.
  MAILING ADDRESS:
  CITY AND ZIP CODE: Chico, CA  95926
  BRANCH NAME:

FOR RECORDER'S USE ONLY

ESTATE OF (Name): DOUGLAS ALAN McCOMBS

DECEDENT

CASE NUMBER: **PR38119**

FOR COURT USE ONLY

| [x] SPOUSAL | [ ] DOMESTIC PARTNER | PROPERTY ORDER |

1. Date of hearing: 12/21/06        Time: 1:30 p.m.
   Dept.: TBA                       Room:

**THE COURT FINDS**

2. All notices required by law have been given.
3. Decedent died on (date) on 8/2/06
   a. [x] a resident of the California county named above.
   b. [ ] a nonresident of California and left an estate in the county named above.
   c. [ ] intestate.  [ ] testate.
4. Decedent's  [x] surviving spouse  [ ] surviving registered domestic partner
   is (name):  Helene D. Stevens

F I L E D
Butte County
Superior Court
DEC 21 2006
Sharol Strickland Clerk
V. ARENS
By_____ Deputy

**THE COURT FURTHER FINDS AND ORDERS**

5. a. [x] The property described in Attachment 5a is property passing to the surviving spouse or surviving registered domestic partner named in item 4, and no administration of it is necessary.
   b. [ ] See Attachment 5b for further order(s) respecting transfer of the property to the surviving spouse or surviving registered domestic partner named in item 4.
6. [ ] To protect the interests of the creditors of (business name):

   an unincorporated trade or business, a list of all its known creditors and the amount owed each is on file.
   a. [ ] Within (specify):        days from this date, the surviving spouse or surviving registered domestic partner named in item 4 shall file an undertaking in the amount of $
   b. [ ] See Attachment 6b for further order(s) protecting the interests of creditors of the business.
7. a. [x] The property described in Attachment 7a is property that belonged to the surviving spouse or surviving registered domestic partner under Family Code section 297.5 and Probate Code sections 100 and 101, and the surviving spouse's or surviving domestic partner's ownership upon decedent's death is confirmed.
   b. [ ] See Attachment 7b for further order(s) respecting transfer of the property to the surviving spouse or surviving domestic partner.
8. [ ] All property described in the Spousal or Domestic Partner Property Petition that is not determined to be property passing to the surviving spouse or surviving registered domestic partner under Probate Code section 13500, or confirmed as belonging to the surviving spouse or surviving registered domestic partner under Probate Code sections 100 and 101, shall be subject to administration in the estate of decedent. [ ] All of such property is described in Attachment
9. [ ] Other (specify):

FILED

[ ] Continued in Attachment 9.

10. Number of pages attached:  1
Date: DEC 21 2006

**07 0061**    JAN 11 2007

**ROGER GILBERT** NANCY MAYER WHITTINGTON, CLE
    JUDICIAL OFFICER    U.S. DISTRICT COURT

[ ] SIGNATURE FOLLOWS LAST ATTACHMENT    Page 1 of 1

**SPOUSAL OR DOMESTIC PARTNER PROPERTY ORDER**
(Probate—Decedents Estates)

Legal
Solutions
Plus

Family Code, § 297.5;
Probate Code, § 13656

Exhibit A

Estate of DOUGLAS ALAN McCOMBS, Deceased        Case No. _____

Attachment 5a and 7a:

    1. A claim for personal injury against Novartis Pharmaceuticals Corporation arising from the decedent's purchase and use of drugs manufactured or sold by said corporation or its related entities.

    2.   25 shares of Microsoft Corporation common stock (Cert. No. MS 572200).

    3.   Microsoft Corporation Investor Services Program, Acct. No. 124830584363 (approximately 32.5 shares Microsoft Corporation common stock).



THE FOREGOING INSTRUMENT IS A CORRECT COPY OF
THE ORIGINAL ON FILE AND ON RECORD IN THIS OFFICE
ATTEST: DATE: DEC 2 1 2006
Sharol H. Strickland, Clerk of the Superior Court
in and for the County of Butte, State of California
By _____Deputy

Attachment 5a + 7a Page 1 of 1

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

**I (a) PLAINTIFFS**

Helene Stevens

05551

**DEFENDANTS**

Novartis Pharmaceuticals Corporation

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Butte County, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Morris County, N.J.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John J. Vecchione, Esq.
Bart T. Valada, Esq.
Valad & Vecchione, PLLC
3863 Plaza Dr.
Fairfax, Virginia 22030

JURY ACTION

CASE NUMBER  1:07CV00061

JUDGE:  Paul L. Friedman

DECK TYPE:  Personal Injury/Malpracti

DATE STAMP: 01/11/2007

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES**
FOR PLAINTIFF

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**◉ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☒ 362 Medical Malpractice
☒ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)**    OR    **○ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

28 USC 1332

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Diversity action on state law claims for damage caused by Defendant's drug sounding in, inter alia, of negligence, strict liability, breach of warranty.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | DEMAND $ >$75,000.0 | Check YES only if demanded in complaint |
|---|---|---|---|
| | | JURY DEMAND: | YES ☒   NO ☐ |

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 01/11/2007   SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.