# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HELENE D. STEVENS,
INDIVIDUALLY AND AS
SUCCESSOR IN INTEREST OF
THE ESTATE OF DOUGLAS ALAN
McCOMBS,
5528 Feather River Place
Paradise, Ca., 95969

                PLAINTIFF

     v.

NOVARTIS PHARMACEUTICALS
CORPORATION
1 Health Plaza
East Hanover, NJ  07936

             DEFENDANT.

C.A. NO.  1:07-cv-00061

JURY TRIAL DEMANDED

## AMENDED COMPLAINT AND JURY DEMAND

NOW COME Plaintiff Helen D. Stevens ("Mrs. Stevens" or "Plaintiff"),

individually and as successor in interest to the estate of her deceased husband

Douglas Alan McCombs ("Mr. McCombs"), by and through counsel, and hereby

sues the Defendant, Novartis Pharmaceuticals Corporation ("Novartis" or

"Defendant"), a Delaware corporation with principal offices located at 1 Health

Plaza, East Hanover, New Jersey, 07936-1080 and for her causes of action states:

1

## I.     INTRODUCTION

1.     The drugs Aredia® and Zometa®, produced and marketed by Novartis and other related Novartis entities, each cause and precipitate osteonecrosis of the jaw, mandible or maxilla bone among patients taking those drugs. Osteonecrosis is bone death resulting from poor blood supply to an area of the bone. Osteonecrosis of the jaw is a permanently disfiguring and extremely painful condition, and can result in the complete loss of the patient's jaw bone. Mr. McCombs was infused with Zometa®, and suffered osteonecrosis of the jaw.

## II.     PARTIES

### A.     PLAINTIFF

2.     Plaintiff, Helene D. Stevens is a citizen and resident of the State of California, residing in Paradise, California. She resided there with her husband until his death. (A Copy of the December 21, 2006 Order of Butte County Superior Court ordering the chose in action against Novartis of Douglas Alan McCombs' estate as property of Ms. Stevens is attached hereto as Exhibit A).

3.     The late Douglas Alan McCombs, resided in Paradise, California with his wife,   He was prescribed, purchased, and was infused with Zometa® and as a result thereof suffered severe osteonecrosis of the jaw.

2

4.     At the time of his receipt of Zometa® infusions, Mr. McCombs resided in California and received Zometa® infusions there.

## B.    DEFENDANT

5.     Defendant Novartis is a foreign corporation with its headquarters located in East Hanover, New Jersey.  Novartis markets and distributes Aredia® and Zometa® throughout the world including all fifty states in the United States, and throughout California.

6.     At all times relevant hereto, Novartis was engaged in the business of marketing, distributing, promoting, testing, labeling and/or selling the pharmaceuticals Aredia® and Zometa®.

## III.    JURISDICTION AND VENUE

7.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000 exclusive of interest and costs, and because this is an action by an individual Plaintiff who is a citizen of a different state than the Defendant.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and 1391(c).

3

## IV.    FACTUAL BACKGROUND

8.    Aredia® and Zometa® are classified as a bisphosphonates and are prescribed for the management of metastatic disease to the bone and other bone diseases and conditions. Zometa® is Novartis's "successor" drug to Aredia®, as Aredia® was the first generation version of the drug Zometa®. Zometa® is now marketed by Novartis for all or almost all of the uses for which it previously marketed Aredia®.

9.    Because of the long "half-life" of the drugs Aredia® and Zometa® in the body, the drugs remain in the bones of persons who have been infused with them for at least many, many years or even permanently. For this reason, onset of osteonecrosis of the jaw or worsening of a patient's condition can occur years after infusions of the drugs have been discontinued.

10.    Aredia® and Zometa® have been approved by the United States Food and Drug Administration.

11.    Although Novartis should have known and disclosed that Aredia® and Zometa® cause osteonecrosis of the jaw even before these drugs were placed on the market, in the year 2002 or before, Novartis was notified by one physician that he had dozens of cases in which patients taking Aredia® had experienced problems so severe that they had lost portions of their jaws. Other oral surgeons during that time frame

4

and before had been reporting such problems to Novartis. On information and belief, Novartis had similar information as to adverse effects caused by its drug Zometa®, which has similar properties and effects as Aredia® and is marketed by Novartis as a more effective replacement for Aredia®. Nevertheless, Novartis did not undertake to advise physicians, notify the consuming public or place information about the possibility of suffering osteonecrosis of the jaw on their products until September of 2004. Novartis did not undertake to notify dental professionals until May of 2005. These efforts to date by Novartis to provide notice are not adequate to provide the public and health care professionals with the information needed to understand the risks inherent in the use of Aredia® and Zometa®.

12.    Despite knowledge of the specific risk, Novartis has failed timely to initiate studies to further investigate risks associated with the use of Aredia® and Zometa®.

13.    Further, Novartis had a duty fully to test and evaluate Aredia® and Zometa® prior to their introduction to the market, to ensure that the drugs were safe to use for their intended purpose. Novartis failed to satisfy this duty.

14.    Novartis failed properly to conduct a "dosing study" to ascertain the minimum effective quantities of Aredia® and Zometa®, and thereby to establish the proper quantities of the drugs to be administered to patients and the proper number of

5

infusions which patients should receive. Identifying the minimum effective dosage and setting the dosage instructions accordingly are critical to avoiding the occurrence of side effects. As a result of Novartis's failure to publish, advise, or instruct health care providers as to the proper dosage, upon information and belief the amount of the drugs actually administered to Mr. McCombs constituted an overdose, and contributed to the side effects and harm he suffered.

15.    Mr. McCombs was prescribed and infused with Zometa® in the course of medical treatment and as a result of using the drugs suffered severe pain and discomfort, exposed dead bone in his mouth, and disfiguration and other harm by his development of osteonecrosis of the jaw. As a result of the osteonecrosis, Mr. McCombs suffered significant pain, difficulty or inability to ingest food normally, physical disfigurement, emotional distress and mental anguish. Mr. McCombs incurred significant medical and health care related costs and expenses to treat his condition. Mr. McCombs was severely damaged in mind and in body and his enjoyment of life was decreased, and he was adversely affected in his avocation, career and/or employment. Mr. McCombs had his life span shortened.

16.    Defendant knew or should have known that Aredia® and Zometa® are dangerously defective products which pose risks to human health, unknown and

unknowable by the consuming public and medical professionals, including Mr. McCombs, and his health care providers, unless disclosed by Defendant.

17.    Because Novartis failed timely and sufficiently to notify Mr. McCombs and his physicians and health care providers of the true risk of osteonecrosis of the jaw when using Aredia® and/or Zometa®, Mr. McCombs in conjunction with his health care providers was unable to undertake preventive dental care which may have prevented his development of osteonecrosis of the jaw or mitigated the harm he suffered.

18.    The Defendant was engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising and otherwise distributing Aredia® and Zometa® in interstate commerce, which it sold and distributed throughout the world, including the State of California.

19.    Mr. McCombs was using Zometa® in the manner for which it was intended or in a reasonably foreseeable manner.

20.    Zometa® was expected to and did reach Mr. McCombs without substantial change in its condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised and otherwise distributed.

21.    Mr. McCombs was not aware of, and reasonably could not have discovered, the dangerous nature of Aredia® and/or Zometa®.

7

22.    Aredia® and Zometa® cause increased risks of osteonecrosis of the jaw upon consumption, and therefore constitute products unreasonably dangerous for normal use due to their defective design, defective manufacture, and the Defendant's misrepresentations and inadequate disclosure of relevant information to Plaintiff including, *inter alia*, the actual risk of developing osteonecrosis of the jaw and the permanent, irreversible harm associated with this disease.

23.    As a direct and proximate result of Defendant's manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, and otherwise distributing Aredia® and Zometa® in interstate commerce, Mr. McCombs suffered osteonecrosis of the jaw.

## V.    CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY

24.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

25.    As a direct and proximate result of Defendant's manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, and otherwise distributing Aredia® and Zometa® in interstate commerce, Plaintiff has suffered compensatory damages.

26.     The Defendant, therefore, is strictly liable to the Plaintiff, and Plaintiff is entitled to compensatory damages in an amount to be proven at trial.  Additionally, Defendant's conduct was so outrageous as to constitute ill will, legal malice, bad motive and reckless indifference to the physical well being and interests of its consumers, including Mr. McCombs.  Plaintiff has suffered compensatory damages and is entitled to punitive damages in an amount to be proven at trial.

### COUNT II
### NEGLIGENCE - NEGLIGENT MANUFACTURE

27.     Plaintiff repeat and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs, and further alleges:

28.     It was the duty of the Defendant to use reasonable care in the manufacturing, creating, designing, testing, sterilizing, packaging, supplying, and otherwise distributing Aredia® and Zometa®.

29.     Contrary to its duty, the Defendant failed:  adequately and properly to test and inspect Aredia® and Zometa® so as to ascertain whether or not each was safe and proper for the purpose for which each was designed, manufactured and sold; adequately and properly to conduct a dosing study or otherwise to test Aredia® and Zometa® to ascertain the minimum effective dosage and to use this information to instruct users of the drugs of the proper dosage so as to minimize the risk of development of osteonecrosis of jaw or other side effects; to utilize and/or implement a

9

reasonably safe design in the manufacture of Aredia® and Zometa®; to manufacture Aredia® and Zometa® in a reasonably safe condition appropriate for the use for which they were intended; and adequately and properly to test Zometa® to ascertain the proper infusion speed to reduce the risk of liver injury or other side effects.

30.    Defendant manufactured and sold Aredia® and Zometa®, which as constituted were a hazard to Mr. McCombs health.  Defendant's manufacture and sale of Aredia® and Zometa® as constituted caused Mr. McCombs to suffer adverse side effects and disease.

31.    Defendant was otherwise careless and negligent.

32.    As a direct and proximate result of Defendant's negligence in manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, and otherwise distributing Aredia® and Zometa® in interstate commerce, Mr. McCombs  suffered osteonecrosis of the jaw.  Plaintiff has suffered compensatory damages and is entitled to punitive damages in an amount to be proven at trial.

### COUNT III
### NEGLIENCE – FAILURE TO WARN

33.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs, and further alleges:

34.    It was the duty of the Defendant to use reasonable care in the labeling, marketing, selling, advertising, and promoting of Aredia® and Zometa®, and to warn Mr. McCombs and his medical providers of the true risk of osteonecrosis of the jaw and other side effects when using Defendant's drugs.

35.    Contrary to its duty, the Defendant failed:  adequately and properly to warn Mr. McCombs of the risks of serious complications and bodily harm when Aredia® and Zometa® are used in the manner for which they were intended; adequately and properly to warn Mr. McCombs of the risks of diseases when Aredia® and Zometa® are used in a manner for which they were intended; adequately and properly to label Aredia® and Zometa® so as to warn Mr. McCombs of the risks of complications and disease; and adequately and properly to label Aredia® and Zometa® so as to warn Mr. McCombs of the risks of osteonecrosis of the jaw; to inform Mr. McCombs and his medical providers the proper speed at which to infuse Zometa® so as to reduce the risk of liver injury or other side effects.

36.    Further, Defendant failed to meet the standard of care set by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., related amendments and codes and federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations.  Defendant further failed in the following respects:

11

a.   The labeling lacked adequate information on the use of the drugs Aredia® and Zometa® (21 C.F.R. Section 201.56(a) and (d));

b.   The labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitation, osteonecrosis of the jaw, and other adverse medical conditions as soon as there was reasonable evidence of their association with the drug (21 C.F.R. 201.57(e));

c.   There was inadequate information for patients for the safe and effective use of Defendant's drugs (21 C.F.R 201.57(f)(2));

d.   There was inadequate information regarding special care to be exercised by Mr. McCombs and Mr. McCombs't doctors for safe and effective use of Defendant's drugs (21 C.F.R. 201.57(f)(1));

e.   The labeling was misleading and promotional (21 C.F.R. 201.56(b)); and

f.   Defendant's acts constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331.

37.   Defendant's products Aredia® and Zometa® were unaccompanied by proper and adequate warnings regarding the risk of osteonecrosis of the jaw associated with the use of Defendant's products and the scope, severity and duration of such injuries.

38.   Despite Defendant's failure to provide adequate warnings to protect users or consumers of Aredia® and Zometa®, Defendant nevertheless continued aggressively to market, promote, distribute, and sell the dangerously defective products.

12

39.    As a result of Defendant's negligence and the violations of the statutes and regulations listed above, Mr. McCombs suffered injuries and damages as alleged herein.

40.    As a direct and proximate result of Defendant's failure to warn, Mr. McCombs suffered osteonecrosis of the jaw. Mr. McCombs developed other diseases and conditions. Plaintiff has suffered compensatory damages and is entitled to punitive damages in an amount to be proven at trial.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

41.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

42.    Defendant expressly warranted to Mr. McCombs, by and through statements made by Defendant or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Aredia® and Zometa® were safe, effective, fit and proper for their intended use.

43.    In using Aredia® and/or Zometa®, Mr. McCombs and his health care providers relied on the skill, judgment, representations and foregoing express warranties of the Defendant. Said warranties and representations were false in that the

13

aforementioned products were not safe and were unfit for the uses for which they were intended.

44.    As a direct and proximate result of Defendant's breaches of warranties, Mr. McCombs suffered osteonecrosis of the jaw, developed other diseases and conditions, and suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

## COUNT V
## BREACH OF IMPLIED WARRANTY

45.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

46.    Prior to the time that Aredia® and/or Zometa® were used by Mr. McCombs, Defendant impliedly warranted to him that Aredia® and/or Zometa® were of merchantable quality and safe and fit for the use for which they were intended.

47.    Mr. McCombs was unskilled in the research, design and manufacture of Aredia® and Zometa® and reasonably relied on the skill, judgment and implied warranty of the Defendant in using Aredia® and/or Zometa®.

48.    Aredia® and Zometa® were neither safe for their intended use nor of merchantable quality, as warranted by Defendant, in that they had dangerous propensities when put to their intended use and would cause severe injuries to the user.

14

49.    As a direct and proximate result of Defendant's breaches of warranties, Mr. McCombs suffered osteonecrosis of the jaw, developed other diseases and conditions, and suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

## COUNT VI
## LOSS OF CONSORTIUM
## (MS. STEVENS, INDIVIDUALLY)

50.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

51.    Before suffering the injuries described herein, Mr. McCombs was able to and did perform all the duties of a husband, including assisting in maintaining the home, and providing love, companionship, affection, society, sexual relations, moral support, and solace to Ms. Stevens. As a direct and proximate result of suffering osteonecrosis of the jaw, Mr. McCombs was impaired in his performance of the duties of a husband, including sexual intercourse, assisting with housework, participating in family recreational or social activities with Ms. Stevens. Due to the nature of the injuries sustained by Mr. McCombs and the severe physical and psychological strains they caused him, Mr. McCombs was no longer able to provide Ms. Stevens with the same level of love, companionship, affection, society, moral support, and solace he provided to her prior to his injuries. Ms. Stevens was therefore deprived of Mr.

15

McCombs' companionship and consortium, and has suffered compensatory damages and is entitled to punitive damages in an amount to be proven at trial.

**COUNT VII**
**WRONGFUL DEATH**
**(Ms. Stevens as successor in interest, surviving spouse or personal representative)**

52.    Plaintiff repeats and realleges, as if fully set forth herein, each and every allegation contained in the above paragraphs and further alleges:

53.    This claim is brought pursuant to § 377.60 of the California Code of Civil Procedure, concerning death by wrongful act of another, and seeks all relief available under that statute, including without limitation expenses for medical care and hospitalization; funeral expenses; the present monetary value of the decedent, Mr. McCombs, including but not limited to:   lost income of the decedent; services, protection care and assistance of the decedent; society, companionship, comfort, guidance, kindly offices and advice of the decedent; and punitive damages.

54.    Mr. McCombs was infused with Zometa® and as a result thereof developed severe osteonecrosis of the jaw.

55.    The osteonecrosis of the jaw caused by the Zometa® infusions contributed to Mr. McCombs death and shortened his life.

56.    As a result of the wrongful death of Mr. McCombs, which was directly and proximately caused by Defendants' actions as described herein, Plaintiff Ms.

16

Stevens, individually, as surviving spouse and as personal representative of Mr. McCombs' estate, is entitled to compensatory and punitive damages for Mr. McCombs' wrongful death as specified above in amounts to be proven at trial.

**WHEREFORE**, Plaintiff prays that this honorable Court enter judgment against Novartis, and in favor of the Plaintiff, and to award the following relief:

a.   Award Ms. Stevens, individually, as surviving spouse and in the capacity as personal representative of her husband's estate, damages to compensate for the wrongful death of her husband, Douglas Alan McCombs;

b.   Award Plaintiff all damages allowed by law to compensate Mr. McCombs for the losses which he endured;

c.   Award Plaintiff damages equal to the amount of Mr. McCombs' medical and health care costs and expenses incurred;

d.   Award Plaintiff damages equal to any amount of lost wages and earnings;

e.   Award Ms. Stevens damages for loss of companionship and consortium with Mr. McCombs;

f.   Award Plaintiff punitive/exemplary damages to the extent necessary and appropriate to punish and deter the conduct complained of herein;

g.   Award Plaintiff attorney's fees and costs, plus interest, as allowed by law; and

h.   Award such other and further legal and equitable relief as this honorable Court deems just and proper.

17

## JURY DEMAND

Plaintiffs hereby demand trial by jury of this action.


Respectfully submitted,


Bart T. Valad, Esq.
John J. Vecchione, Esq.
VALAD & VECCHIONE, PLLC
3863 Plaza Drive
Fairfax, Virginia 22030
Telephone: (703) 352-4800
Fax: (703) 352-4820

Dated: January 23, 2007          *Attorneys for Plaintiffs*

18